SUPERIOR COURT
OF THE
STATE OF DELAWARE

RICHARD F. STOKES
*JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

Raylena Moss, *pro se*
1007 Cecil Street,
Salisbury, MD 21804

Mountaire Farms
P.O. Box 710
Selbyville, DE 19975

RE:     *Raylena Moss v. Mountaire Farms and Unemployment Insurance Appeal Bd.,*
        <u>C.A. No. S14A-05-001-RFS</u>

Date Submitted:     July 25, 2014
Date Decided:       September 29, 2014

Dear Parties:

Before the Court is the appeal of Raylena Moss ("Moss") of a decision rendered against her by the Unemployment Insurance Appeal Board (the "Board") regarding her termination by her former employer, Mountaire Farms ("Mountaire"). For the reasons explained below, the Board's decision is **<u>AFFIRMED</u>**.

## <u>FACTS & PROCEDURAL BACKGROUND</u>

Moss was employed by Mountaire from July 27, 2012 until her termination on December 10, 2013. During this time Moss worked as an associate in the washroom department.

1

After her termination, Moss filed for unemployment insurance benefits with the Delaware Department of Labor's Division of Unemployment Insurance. The Claims Deputy/Agency Representative for the Division found that Mountaire met its burden of showing just cause for Moss' discharge, and therefore found her disqualified from receiving unemployment benefits.

Moss filed a timely appeal to an Appeals Referee. The Appeals Referee agreed with the Claims Deputy regarding Moss being discharged from her work with Mountaire for violation of a company policy. Specifically, Mountaire claimed that Moss violated the company's attendance policy.

In his written opinion, the Referee described the events that took place during the months of November and December, 2013, which ultimately led to Moss' termination. Moss was working for Mountaire at its Princess Anne hatchery, beginning on July 27, 2013. The hatchery has an attendance policy that states once an employee reaches six attendance points they are to be terminated immediately. The strict attendance policy was put into place because the hatchery site is a smaller operation and attendance is critical.

Every employee is made aware of the attendance policy and is required to sign the attendance policy which states "when an employee's record initially reaches . . .

six occurrences the employee's position will be terminated."[1] The attendance policy states that absence from work will be regarded as one occurrence except for those absences related to an approved Leave of Absence. The approved leave of absence includes absences for funeral leave, jury duty, family, and medical leave. The attendance policy also states that should an employee be absent for two or more consecutive days, each absence will be considered a separate occurrence unless the employee can supply an authorized medical certification stating an inability to work for the days in question, and in such a case, the employee will only be charged with one occurrence. Moss acknowledged that she was aware of this policy.

Moss's first absence occurred on August 15, 2013. For this she received one occurrence on her record. Moss was then absent from work on September 12, 2013, bringing the total number of occurrences to two. Under the policy, Moss was able to remove half of an occurrence if she completed thirty days without missing or being late for work. Thus, in order to achieve this, she needed a perfect attendance record until October 12, 2013. Moss reached this date, and therefore half of an occurrence was removed from her record, bringing her total to one and a half occurrences. On November 5, 2013, Moss was late for work and received half of an occurrence, which brought the total to three occurrences. Moss then missed work on November 25,

---

[1] R. at 8.

2013, bringing her total to four. Mountaire issued Moss a warning, which was mailed to and received by Moss. This served as the final warning for violation of the attendance policy. It also included a provision that if Moss received five occurrences she would be suspended and if she received six occurrences she would be terminated.

Moss left work early on December 6, 2013 and received one occurrence bringing the total to five. On December 9, 2013 Moss missed work and received one occurrence bringing her total to six, the maximum number of occurrences allowed by Mountaire's attendance policy. Therefore, when Moss came into work on December 10, 2013, she was terminated.

The Appeals Referee held that Moss was terminated for just cause. The Referee also held that Mountaire met its burden of proving by a preponderance of the evidence that the claimant was terminated for just cause. Therefore, he concluded that Moss was disqualified from receiving unemployment insurance benefits. Moss filed a timely appeal to the Board. Moss did not appear at the Board hearing, and as a result, the Board dismissed her appeal for failure to appear.[2] This appeal followed.

---

[2]*See* R. at 57 ("[James T. Wakley:] This is the case of Raylena Moss versus Moutnaire Farms. This was the claimant's appeal from a referee's determination that the claimant was discharged from her employment with just cause in connection with the scope of her employment. Let the record reflect that the claimant was noticed at the address of record of the date, time and location of the Board's hearing for a hearing to be held on April 16[th], 2014 at 2:20 PM in Dover. It is now 3:32 PM. A diligent search of the premises has revealed that the claimant has not appeared to prosecute the appeal and on motion the appeal will be dismissed.").

## STANDARD OF REVIEW

When reviewing appeals from the Board, this Court examines only the record upon which the Board relied in making its decision.[3] This Court only determines whether substantial evidence supported the Board's decision, and whether the Board's decision lacked legal error.[4] The requisite degree of evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] Evaluating the evidence, deciding credibility issues, and determining factual questions are not within this Court's purview.[6] Ultimately, the Court only decides whether a sufficient basis supports the Board's decision.

## ANALYSIS

Moss argues that she missed the Board's hearing because she was running late. Her hearing was scheduled to be held at the Board's office in Dover, Delaware at 2:20pm. The Board sent Moss a written notice setting forth the date, time, and location of the hearing for her appeal. Moss contends that she is entitled to unemployment benefits because (1) she was excused by her supervisor for one or

---

[3]*Burgos v. Perdue Farms, Inc.*, 2011 WL 1487076, at *2 (Del. Super. Apr. 19, 2011)

[4]*Id.*

[5]*Id.*

[6]*Id.*

5

more of her absences, and because (2) she was at the Board's office at 2:45pm for her hearing at 2:20pm, and claims that her name was never called as she waited to be heard. Regarding her first reason, Moss claims that she was told by her supervisor that if she received a doctor's note for her absence on Friday, December 6, 2013, it would be forgiven and would not count towards her occurrences.

This Court's appellate review of a Board decision is limited to the merits. Because the Board did not hear Moss' case on the merits, the only issue this Court may address is whether or not the Board abused its discretion in dismissing her case. The Court has previously addressed this issue:

> The Board maintains statutory authority to promulgate regulations designed to ensure the prompt and orderly determination of the parties rights. In that regard, the Board has adopted Unemployment Insurance Appeals Board Rule B which provides, in pertinent part, that "[a]ll parties are required to be present for a hearing at the scheduled time. Any party who is not present within 10 minutes after the scheduled time for hearing shall be deemed to waive his right to participate in said hearing." The Court cannot conclude that the Board abused its discretion by dismissing Claimants appeal. This Court has previously recognized "the importance of adhering to a hearing schedule to efficiently manage and dispose of cases and the need to enforce rules such as Rule B to engender cooperation from the interested parties." Thus, the Court concludes that the Board did not act arbitrarily by dismissing Claimant's appeal for failure to appear.[7]

---

[7] *Archambault v. McDonald's Restaurant*, 1999 WL 1611337, at *2 (Del. Super. Mar. 22, 1999).

6

The Board in this case did not abuse its discretion when it dismissed Moss' appeal for failing to appear on time for her appeal. Moss was given clear written notice of the time, place, and location of the Board's hearing. The written notice sent to Moss informed her that she was required to arrive "at least 15 minutes before the time of [her] hearing is scheduled to begin."[8] The notice also informed Moss that "failure to appear for [her] hearing in a timely manner c[ould] result in [her] appeal being dismissed."[9] The Board waited for over fifteen minutes after the scheduled start time, but Moss failed to appear when called.[10] Moss was put on notice of the consequences of her failure to appear on time for her hearing. Moss cannot argue the Board abused its discretion when she was put on notice of the consequences of her failure to appear before the Board for her hearing. The Board's decision is in accordance with the applicable law and is supported by substantial evidence in the record.

---

[8] R. at 55.

[9] *Id.*

[10] Moss argues that she was told by a person upon her arrival that she had missed her appeal and that she should leave. She was told this at 3:00 PM. Whether or not this is true is irrelevant. Nor is it relevant that the Board did not put on the record until 3:32 PM that Moss's appeal was being dismissed. Moss knew what time she was required to be present for her appeal.

## CONCLUSION

The Unemployment Insurance Appeal Board's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

Very truly yours,

/s/ **Richard F. Stokes**

Richard F. Stokes

cc: Prothonotary
    Judicial Case Manager

8